NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

_____

**UNILOC 2017 LLC,**
*Appellant*

**v.**

**APPLE INC., SNAP INC., FACEBOOK, INC., WHATSAPP, INC.,**
*Appellees*

_____

2019-1197

_____

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Nos. IPR2017-00221, IPR2017-01612, IPR2017-01636.

_____

Decided:  February 11, 2021

_____

JAMES ETHERIDGE, Etheridge Law Group, Southlake, TX, for appellant.  Also represented by RYAN S. LOVELESS, BRETT MANGRUM, JEFFREY A. STEPHENS.

LAUREN B. FLETCHER, Wilmer Cutler Pickering Hale and Dorr LLP, Boston, MA, for appellee Apple Inc.  Also represented by S. CALVIN WALDEN, New York, NY; BRITTANY BLUEITT AMADI, HEATH BROOKS, Washington, DC.

HEIDI LYN KEEFE, Cooley LLP, Palo Alto, CA, for appellees Snap Inc., Facebook, Inc., WhatsApp, Inc. Also represented by MARK R. WEINSTEIN. Appellee Snap Inc. also represented by REUBEN HO-YEN CHEN. Appellees Facebook, Inc., WhatsApp, Inc. also represented by LOWELL D. MEAD; PHILLIP EDWARD MORTON, Washington, DC.

———————

Before LOURIE, WALLACH, and CHEN, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Appellee, Apple Inc. ("Apple"), sought inter partes review ("IPR") of claims 1–6, 14, 15, 17–20, 28, 29, 31–34, 40–43, 51–54, 62–65, and 68 (collectively, "the Challenged Claims") of U.S. Patent No. 7,535,890 ("the '890 patent"), owned by Appellant, Uniloc 2017 LLC ("Uniloc").[1] The United States Patent and Trademark Office's ("USPTO") Patent Trial and Appeal Board ("PTAB") issued a final written decision ("the Final Written Decision"), concluding that Petitioners had "establishe[d], by a preponderance of the evidence, that all [the C]hallenged [C]laims . . . are unpatentable." *Apple Inc. v. Uniloc USA, Inc.*, No. IPR2017-00221, 2018 WL 4210334, at *21 (P.T.A.B. May 23, 2018).[2]

Uniloc appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(4)(A). We affirm.

———————

[1]    Appellees, Snap Inc. ("Snap"), Facebook, Inc. ("Facebook"), and WhatsApp Inc. ("WhatsApp"), were subsequently joined to the instant IPR as petitioners along with Apple (collectively, "Petitioners"). J.A. 105, 123.

[2]    While the Final Written Decision lists Uniloc USA, Inc. and Uniloc Luxembourg S.A. as the "Patent Owner," *Apple*, 2018 WL 4210334, at *1, the Patent Owner's Notice of Appeal states that Uniloc 2017 LLC now owns the '890 patent, ECF No. 1, Doc. 2 at 1.

BACKGROUND

I. The '890 Patent

Entitled "System and Method for Instant [Voice over Internet Protocol ('VoIP')] Messaging," the '890 patent "generally relates to Internet telephony (IP telephony)" and "[m]ore particularly . . . to a system and method for enabling local and global instant VoIP messaging over an [Internet Protocol ('IP')] network, such as the Internet[.]" '890 patent col. 1 ll. 7–11. The '890 patent states that while "[v]oice messaging" and "[i]nstant text messaging" in VoIP are "known" in the prior art, *id*. col. 2 ll. 11–23, "there is a need in the art for providing local and global instant voice messaging over VoIP," *id*. col. 2 ll. 40–41. Thus, the '890 patent discloses a "local instant voice messaging (IVM) system" comprising a "local IVM server . . . enabled to provide instant voice messaging to one or more IVM clients[.]" *Id*. col. 6 ll. 40–49.

The '890 patent explains that IVM clients are "VoIP telephone[s]" that "are commercially available from many vendors," *id*. col. 7 ll. 14–25, and "which comprise[] a screen display . . . capable of displaying instant voice messages recorded and/or received by a user of the IVM client[,]" *id*. col. 7 ll. 15–18. The IVM clients may "display[] a list of one or more IVM recipients" from which a user selects "one or more IVM recipients[.]" *Id*. col. 8 ll. 43–48. When in a "record mode," "[t]he user selection . . . generates a start signal to the IVM client" and "[i]n response . . . , the IVM client . . . records the user's speech into a digitized audio file . . . (i.e., instant voice message) stored on the IVM client[.]" *Id*. col. 7 l. 47–col. 8 l. 1. "Once the recording of the user's speech is finalized, . . . [t]he user generates [a] send signal" and "[t]he IVM client . . . transmits the digitized audio file . . . to the local IVM server[.]" *Id*. col. 8 ll. 1–12. The local IVM server "delivers the transmitted instant voice message to the selected one or more recipients" which "are enabled to display an indication that the instant voice

message has been received and audibly play the instant voice message to an associated user." *Id.* col. 8 ll. 17–22. The '890 patent explains, however, "that only the available IVM recipients, currently connected to the IVM server . . . , will receive the instant voice message" and "that if a recipient IVM client is not currently connected to the local IVM server . . . (i.e., is unavailable), the IVM server temporarily saves the instant voice message and delivers it to the IVM client when the IVM client connects to the local IVM server . . . (i.e., is available)." *Id.* col. 8 ll. 22–29.

Independent claim 1 of the '890 patent recites:

An instant voice messaging system for delivering instant messages over a packet-switched network, the system comprising:

a client connected to the network, the client selecting one or more recipients, generating an instant voice message therefor, and transmitting the selected recipients and the instant voice message therefor over the network; and

a server connected to the network, the server receiving the selected recipients and the instant voice message therefor, and delivering the instant voice message to the selected recipients over the network, the selected recipients enabled to audibly play the instant voice message, and the server temporarily storing the instant voice message if a selected recipient is unavailable and delivering the stored instant voice message to the selected recipient once the selected recipient becomes available.

*Id.* col. 23 l. 55–col. 24 l. 3.  Independent claim 14 recites:

UNILOC 2017 LLC v. APPLE INC.                                         5

> An instant voice messaging system for delivering instant messages over a plurality of packet-switched networks, the system comprising:
>
>> a client connected to a local network, the client selecting one or more external recipients connected to an external network outside the local network, generating an instant voice message therefor, and transmitting the selected recipients and the instant voice message therefor over the local network and the external network; and
>>
>> a server connected to the external network the server receiving the selected recipients and the instant voice message therefor, and delivering the instant voice message to the selected recipients over the external network, the selected recipients being enabled to audibly play the instant voice message, and the server temporarily storing the instant voice message if a selected recipient is unavailable and delivering the stored instant voice message to the selected recipient once the selected recipient becomes available.

*Id.* col. 25 ll. 22–39. Claim 16, which depends from independent claim 14, further recites:

> [W]herein the local network is a network within an enterprise.

*Id.* col. 25 ll. 52–54. Claim 17, which also depends from independent claim 14, further recites:

> [W]herein the external network is the Internet.

*Id.* col. 25 ll. 55–56. Independent claim 28 recites:

An instant voice messaging system for delivering instant messages over a plurality of packet-switched networks, the system comprising:

a client connected to an external network, the client selecting one or more recipients connected to a local network, generating an instant voice message therefor, and transmitting the selected recipients and the instant voice message therefor over the external network; and

a[n] external server system connected to the external network, the external server system receiving the selected recipients and the instant voice message, and routing the selected recipients and the instant voice message over the external network and the local network.

a local server connected to the local network the local server receiving the selected recipients and the instant voice message therefor, and delivering the instant voice message to the selected recipients over the local network, the selected recipients being enabled to audibly play the instant voice message, and the local server temporarily storing the instant voice message if a selected recipient is unavailable and delivering the stored instant voice message to the selected recipient once the selected recipient becomes available.

*Id.* col. 27 ll. 6–28.

## II. The Prior Art

### A. Malik

Entitled "Voice Message Delivery Over Instant Messaging," U.S. Patent No. 7,123,695 ("Malik") "is generally related to communications and, more particularly, is related to a system and method for relaying voice messages over a communication network." J.A. 1173; *see* J.A. 1163–80 (Malik). Malik discloses "a system and method for sending voice instant messages [('VIMs')]," and "includes a communications client of a user that is configured to generate a [VIM] and send a [VIM] to another user." J.A. 1163. Malik explains that "[a]n instant messaging network recognizes when a user is [']present' on the network." J.A. 1173. As a result, "the network sends [a] notification to other users (usually members of a 'buddy list' or 'contact list') that are also logged on the network that the user is 'present.'" J.A. 1173. In relevant part, Malik describes an exemplary system or method whereby "when an authorized user attempts to send an instant message to [a] first user and the: first user is not present and/or available, the authorized user may be given the opportunity to generate a [VIM] for the first user." J.A. 1175.

### B. Väänänen

Entitled "Instant Video- and Voicemail Messaging Method and Means," WIPO Pub. No. WO 02/17658 ("Väänänen") discloses "a server[-]centric method and means for instant voice and video mail messaging." J.A. 1181; *see* J.A. 1181–217 (Väänänen). Väänänen describes, in relevant part, "[a] user choos[ing] a recipient for a voice[] or video mail from the contacts book of the terminal[,]" after which "[t]he terminal forms a data connection to a server[.]" J.A. 1183. Väänänen explains that the message is then recorded and "store[d] . . . to a database." J.A. 1184. "If the recipient is unavailable, the message may be stored on the server for some time, and attempts to

deliver the message may be taken at timely intervals." J.A. 1189.

## DISCUSSION

Uniloc argues that the PTAB did not properly construe the terms "local network" and "external network" recited in claims 14, 16, 17, 28, 31, 51, and 62 of the '890 patent. Appellant's Br. 12–21. Uniloc also challenges, as unsupported by substantial evidence, the PTAB's determinations that independent claims 1, 14, 28, 40, 51, and 62 would have been obvious over Malik and Väänänen. *Id.* at 5–12. After stating the applicable standard of review, we address each argument in turn.

## I. Standard of Review

"We review the PTAB's factual findings for substantial evidence and its legal conclusions de novo." *Redline Detection, LLC v. Star Envirotech, Inc.*, 811 F.3d 435, 449 (Fed. Cir. 2015) (citation omitted). "Substantial evidence is something less than the weight of the evidence but more than a mere scintilla of evidence," meaning that "[i]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *In re NuVasive, Inc.*, 842 F.3d 1376, 1379–80 (Fed. Cir. 2016) (internal quotation marks and citations omitted). "If two inconsistent conclusions may reasonably be drawn from the evidence in record, the PTAB's decision to favor one conclusion over the other is the epitome of a decision that must be sustained upon review for substantial evidence." *Elbit Sys. of Am., LLC v. Thales Visionix, Inc.*, 881 F.3d 1354, 1356 (Fed. Cir. 2018) (internal quotation marks, brackets, and citation omitted).

## II. Claim Construction

## A. Legal Standard

At the time the IPR petition was filed in this case, the PTAB construed claims according to their broadest

reasonable interpretation ("BRI") in light of the specification. *See Samsung Elecs. Co., Ltd. v. Elm 3DS Innovations, LLC*, 925 F.3d 1373, 1376 (Fed. Cir. 2019) (citing 37 C.F.R. § 42.100(b) (2017)) ("The [PTAB] construes claims in an unexpired patent according to their [BRI] in light of the specification."); 37 C.F.R. § 42.100(b) (providing that the PTAB gives "[a] claim . . . its broadest reasonable construction in light of the specification of the patent in which it appears").[3] The "specification includes both the written description and the claims of the patent." *Cisco Sys., Inc. v. TQ Delta, LLC*, 928 F.3d 1359, 1362 (Fed. Cir. 2019) (internal quotation marks and citation omitted). "A patent's specification, together with its prosecution history, constitutes intrinsic evidence to which the PTAB gives priority when it construes claims." *Knowles Elecs. LLC v. Cirrus Logic, Inc.*, 883 F.3d 1358, 1361−62 (Fed. Cir. 2018) (citation omitted).[4] We review the PTAB's assessment of the intrinsic evidence de novo. *See id.* at 1362.

### B. The PTAB Properly Construed the Terms "External Network" and "Local Network"

The PTAB concluded that "there is a difference between the terms" "external network" and "local network"

---

[3] Although the USPTO has revised its claim construction standard consistent with the standard set forth in *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005) (en banc), and its progeny, we apply the BRI standard in this case, as Apple filed the IPR petition giving rise to this case before November 13, 2018. J.A. 260; *see* 83 Fed. Reg. 51,340, 51,358 (Oct. 11, 2018) (codified at 37 C.F.R. § 42.100(b)).

[4] A patent's prosecution history "consists of the complete record of the proceedings before the [US]PTO," which provides "evidence of how the [US]PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317 (citations omitted).

recited in claims 14, 16, 17, 28, 31, 51, and 62 of the '890 patent "in that they refer to networks of differing geographic scope relative to each other." *Apple*, 2018 WL 4210334, at *5. The PTAB explained that because its obviousness analysis did "not require a complete, explicit construction of either term," it addressed their construction "only to the extent necessary to resolve the issues in this case." *Id.* Uniloc argues that the PTAB erred "by adopting its construction sua sponte for the first time in its Final Written Decision," Appellant's Br. 13, and that its construction renders other claim language "superfluous," *id.* at 17. We disagree with Uniloc.

The PTAB properly construed the terms "external network" and "local network" as recited in the Challenged Claims. We begin our analysis with the claim language. *See In re Power Integrations, Inc.*, 884 F.3d 1370, 1376 (Fed. Cir. 2018) ("Claim construction must begin with the words of the claims themselves." (internal quotations, brackets, and citation omitted)). Independent claim 14 recites, in relevant part, "a client connected to *a local network*, the client selecting one or more external recipients connected to *an external network outside the local network*, . . . transmitting the selected recipients and the instant voice message . . . over *the local network and the external network*," and "a server connected to *the external network*, the server . . . delivering the instant voice message to the selected recipient over *the external network*." '890 patent col. 25 ll. 24–33 (emphases added). Dependent claim 16 recites the "instant voice messaging system" of independent claim 14, "wherein *the local network is a network within an enterprise*." *Id.* col. 25 ll. 52–54 (emphasis added). Dependent claim 17 recites the "instant voice messaging system" of independent claim 14, "wherein *the external network is the Internet*." *Id.* col. 25 ll. 55–56 (emphasis added). Thus, a plain reading of the claim language, in its full context, indicates that the "external network" and "local network" are geographically distinct from

one another.  *See, e.g.*, *id.* col. 25 ll. 25–26 (referring to the "external network" as located "*outside* the local network") (emphasis added); col. 27 ll. 9–23 (reciting the "transmi[ssion] [of] the selected recipients and the [IVM]" from the "external network" to the "local network"); *see ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003) ("[T]he context of the surrounding words of the claim also must be considered in determining the ordinary and customary meaning of those terms.").  Thus, the claim language supports the conclusion that the "local network" and the "external network" recited in the Challenged Claims refer to networks of differing geographic scope.

We turn next to the broader specification.  *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1363 (Fed. Cir. 2016).  Though the specification does not explicitly define "external network" and "local network," *see generally* '890 patent, it repeatedly uses the words "global" and "external," in contrast with the word "local," to describe terms in relation to one another, s*ee, e.g.,* col. 1 ll. 8–11 (stating that "the present invention is directed to a system and method for enabling *local* and *global* instant VoIP messaging over an IP network, such as the Internet") (emphases added), col. 2 ll. 40–41 (detailing the "need in the art for providing *local* and *global* instant voice messaging over VoIP") (emphases added), col. 5 ll. 27–29 (describing "transmi[ssion] . . . over the *local* network and the *external* network") (emphases added), col. 6 ll. 21–22 (stating that Figure 5 "illustrates an exemplary *global* IVM system comprising a *local* IVM system and *global* IVM clients") (emphases added).  Consistent with the claim language, the specification also repeatedly refers to an "external network" as located "*outside* the local network."  *Id.* col. 3 ll. 29–30 (emphasis added); *see id.* col. 3 ll. 24–30 (describing an "embodiment of the present invention," in which a client selects "one or more *external* recipients connected to *an external network outside the local network*") (emphases added), col. 3 ll. 46–47 (same), col. 3 ll. 64–65 (same), col. 5

ll. 4–6 (same). Thus, as with the plain language of the Challenged Claims, the specification supports the conclusion that the "local network" and the "external network" recited in the Challenged Claims refer to networks of differing geographic scope.[5]

Uniloc's counterarguments are unpersuasive. First, Uniloc argues that the PTAB "adopt[ed] its construction sua sponte for the first time in its Final Written Decision, without having first given Uniloc the opportunity to brief counter[-]arguments." Appellant's Br. 13. Uniloc's argument is inaccurate. The parties briefed the claim construction issue, J.A. 194–95 (Apple proposing a construction of "external network" as "a network that is outside another network," and arguing that "[t]he claims recite 'an external network outside the local network'"), 340 (Uniloc arguing that "the words 'local' and 'external' refer to distinct *types* of networks"), and heard argument on the issue at the IPR hearing, J.A. 476 (Apple arguing that "a local network is strictly a *geographic* network based on a distance between a server and a client and that it is a relative location with respect to the external [network]") (emphasis added), 504–17 (Uniloc arguing that "external" and "local" refers to the network's "type").

Second, Uniloc argues that construing "the qualifier 'external'" as referring to "a network of differing geographic scope relative to the local network" would render the claim language's recitation of an "external network" as located

---

[5]   Neither Petitioners nor Uniloc relied on any portion of the '890 patent's prosecution history to support their respective constructions of "external network" and "local network." *See generally* Appellant's Br. 12–21; Appellee's Br. 44–6; and Reply Br. 8–17. Accordingly, we do not consider it. *See Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996) (providing that we will consider the prosecution history "if in evidence").

"outside the local network" superfluous.  Appellant's Br. 17 (internal quotation marks and alterations omitted); *see Power Mosfet Techs., L.L.C. v. Siemens AG*, 378 F.3d 1396, 1410 (Fed. Cir. 2004) ("[I]nterpretations that render some portion of the claim language superfluous are disfavored."). This argument is without merit.  "The preference for giving meaning to all terms . . . is not an inflexible rule that supersedes all other principles of claim construction." *SimpleAir, Inc. v. Sony Ericsson Mobile Commc'ns AB*, 820 F.3d 419, 429 (Fed. Cir. 2016).  Claim language must be considered in "the context of the surrounding words," *ACTV,* 346 F.3d at 1088, and construed "in light of the [patent] specification," *Samsung,* 925 F.3d at 1376.  Here, the claim language describing an "external network" as "outside the local network," '890 patent, col. 25 ll. 25–26, provides context as to the meaning of "external," and is consistent with the broader specification's description of the claimed invention, *see id.* col. 3 ll. 24–30 (describing an "embodiment of the present invention" as "comprising . . . an external network outside the local network").[6]  Thus,

---

6    Uniloc similarly argues that "[t]he doctrine of claim differentiation" refutes the PTAB's construction, contending that because "[n]ot all [the challenged] claims which recite 'external network' further limit that term with the phrase 'outside the local network,' . . . construing the qualifier 'external' as referring to a network's relative geographic scope "risks impermissibly importing features of one claim into another." Appellant's Br. 18.  This argument fails to persuade us.  The phrase "external network outside the local network" appears only in independent claims 14, 27, 51, 60, and 61, '890 patent col. 25 l. 26–col. 31 l. 53, and "we have declined to apply the doctrine of claim differentiation where, as here, the claims are not otherwise identical in scope," *Indacon, Inc. v. Facebook, Inc.*, 824 F.3d 1352, 1358 (Fed. Cir. 2016); *see also Hormone Research Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1567 n.15 (Fed.

the PTAB properly construed the terms "external network" and "local network" as "refer[ring] to networks of differing geographic scope relative to each other." *Apple*, 2018 WL 4210334, at *5.

## III. Obviousness

### A. Legal Standard

A patent claim is invalid as obvious "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a [PHOSITA]." 35 U.S.C. § 103(a). Obviousness is a question of law based on underlying findings of fact. *See In re Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). Those underlying findings of fact include (1) "the scope and content of the prior art," (2) the "differences between the prior art and the claims at issue," (3) "the level of ordinary skill in the pertinent art," and (4) the presence of objective indicia of non-obviousness such "as commercial success, long felt but unsolved needs, failure of others," and unexpected results. *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966); *see United States v. Adams*, 383 U.S. 49, 50–52 (1966). In assessing the prior art, the PTAB also "consider[s] whether a PHOSITA would have been motivated to combine the prior art to achieve the claimed invention and whether there would have been a reasonable expectation of success in doing so." *In re Warsaw Orthopedic, Inc.*, 832 F.3d 1327, 1333 (Fed. Cir. 2016) (internal quotation marks, brackets, and citation omitted).[7]

Cir. 1990) ("It is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent claims are involved.").

[7] Congress amended § 103 when it passed the AIA. Pub. L. No. 112-29, § 3(b)(1), 125 Stat. at 285–87. However, because neither the '890 patent nor the application that led

B. Substantial Evidence Supports the PTAB's Conclusion
that Malik and Väänänen Render Obvious the
"Transmitting the Selected Recipients" Limitation of
Independent Claims 1, 14, 28, 40, 51, and 62

The PTAB concluded, inter alia, that Malik and Väänänen render obvious the "transmitting the selected recipients" limitation of independent claims 1, 14, 28, 40, 51, and 62. *Apple*, 2018 WL 4210334, at \*16–17. Specifically, the PTAB found that Väänänen discloses "that [a] subscriber terminal sends the contact information of the recipient to the server," and that "a [PHOSITA] would have found it obvious to incorporate this teaching into" the voice message delivery system disclosed by Malik "to indicate where to deliver the VIM based on the selected recipient information." *Id*. at \*16 (internal quotation marks and citation omitted). Uniloc contends, however, that: (1) the PTAB "provided no explanation for why it concluded Apple met its burden to prove" the limitations recited by independent claims 14 and 51 invalid, Appellant's Br. 5; (2) that Malik does not teach transmitting or routing the selected recipients and the instant voice message over the local network and the external network, as recited by independent claims 14, 28, 51, and 62, *id*. at 5–9; and (3) that Malik "teaches away" from allowing "the generating/transmitting client to select and transmit one or more recipients for an [IVM]," as recited by independent claims 1 and 40, *id*. at 9. We disagree with Uniloc.

Substantial evidence supports the PTAB's conclusion that the "transmitting the selected recipients" limitation

---

to the '890 patent ever contained a claim having an effective filing date on or after March 16, 2013, or a reference under 35 U.S.C. §§ 120, 121, or 365(c) to any patent or application that ever contained such a claim, '890 patent, Title Page, pre-AIA § 103 applies, *see id*. § 3(n)(1), 125 Stat. at 293.

recited in independent claims 1, 14, 28, 40, 51, and 62 would have been obvious in view of Malik and Väänänen. First, substantial evidence supports the PTAB's conclusion that Malik and Väänänen teach the "transmitting the selected recipients" limitation. Independent claims 1, 14, 28, 40, and 62 all recite a limitation directed to "transmitting the selected recipients and the instant voice message therefor[.]" '890 patent col. 23 ll. 60–61 (claim 1), col. 25 ll. 27–28 (claim 14), col. 27 ll. 11–13 (claim 28), col. 28 ll. 27–28 (claim 40), col. 32 ll. 13–14 (claim 62). Independent claim 51 similarly recites a limitation directed to "transmitting the selected external recipients and the instant voice message therefor[.]" *Id*. col. 30 ll. 16–17. Väänänen, in turn, discloses that "[t]he subscriber terminal sends the contact information of the recipient to the server," J.A. 1183, following which "the server relays the message to the recipient(s) through the Internet or telephony network," J.A. 1188. Väänänen further discloses that the "[t]he recipient contact information may comprise the telephone number, static or dynamic IP-address," among other information. J.A. 1187. Malik discloses a "voice message delivery system," wherein, in a representative embodiment, "the VIM client . . . is configured to receive and play a voice recording . . . in a [VIM] it receives from other users, such as a second user." J.A. 1174. Malik teaches that "[e]ach VIM client . . . communicates with . . . a VIM server . . . via the Internet or some other communication network." J.A. 1174. "Accordingly, the VIM server . . . includes the capabilities of conventional IM servers and the additional capabilities for handling VIM message delivery and storage." J.A. 1174. Thus, substantial evidence supports the PTAB's conclusion that Väänänen's method of sending a recipient's contact information to a server and Malik's voice message delivery system render obvious the "transmitting the selected recipients" limitation of independent claims 1, 14, 28, 40, 51, and 62.

Second, substantial evidence supports the PTAB's con-clusion that a PHOSITA would have been motivated to combine Malik's voice message delivery system and Väänänen's method of sending a recipient's contact infor-mation. *Apple*, 2018 WL 4210334, at *12. Petitioners' ex-pert explained that though "Malik discloses [that a] 'VIM client . . . of the second user receives a request or prompt by the second user to send an [IM] to the first user,'" J.A. 1072 (citing J.A. 1175), "Malik does not explain in de-tail . . . how the second user . . . could input information . . . to designate the first user" as the recipient, and thus "a PHOSITA would be motivated to seek out ways in which a user could input information designating a recipient[] . . . for example, by using the well-known teachings in Väänänen," J.A. 1072. The PTAB, considering the testi-mony of the parties' respective experts, credited Petition-ers' expert, *Apple*, 2018 WL 4210334, at *11, "and conclude[d] that a preponderance of the evidence supports a finding that a [PHOSITA] would have found it obvious to combine Malik's system with Väänänen's disclosed meth-ods of recipient selection," *id*. at 12. "We find no error in the [PTAB]'s decision to credit the opinion of [Petitioners'] expert . . . , and we do not reweigh evidence on appeal." *Apple Inc. v. Voip-Pal.com, Inc.*, 976 F.3d 1316, 1325 (Fed. Cir. 2020). Accordingly, substantial evidence supports the PTAB's conclusion that a PHOSITA would have been mo-tivated to combine Malik's voice message delivery system and Väänänen's method of sending a recipient's contact in-formation.

Uniloc's counterarguments are unpersuasive. First, Uniloc argues that that the PTAB "provided no explanation for why it concluded [Petitioners] met [their] burden to prove" the limitations recited by independent claims 14 and 51 invalid, "apart from offering an unexplained cita-tion to a single page of the Petition and a paragraph" of an attached declaration. Appellant's Br. 5–6 (internal quota-tion marks omitted) (citing J.A. 43); *see* Appellant's Br. 5

(referencing independent claim 14's limitations "directed to 'a client connected to a local network, . . . one or more external recipients connected to an external network, [and the client] transmitting the selected recipients . . . over the local network and the external network" (citing '890 patent, col. 25 ll. 24–29)), 7 (referencing independent claim 51's recitation of "transmitting the selected external recipients and the instant voice message therefor over the local network and the external network" (citing '890 patent, col. 30 ll. 16–18)). Yet again, Uniloc's statement is inaccurate. On the page Uniloc cites, the PTAB stated: "[i]n addition to the reasons discussed above, we specifically find . . . that Malik and Väänänen render obvious 'a client connected to a local network,'" *Apple*, 2018 WL 4210334, at *17 (citing to the IPR Petition (J.A. 219, 223), Apple's Reply (J.A. 391–92), Malik (J.A. 1174, 1176), Väänänen (J.A. 1196–97), and Petitioners' expert's testimony (J.A. 1079–80)); "'one or more external recipients connected to an external network,'" *id.* (citing the IPR petition (J.A. 223–24), Malik (J.A. 1174), and Petitioners' expert's testimony (J.A. 1083)), "and 'the client . . . transmitting the selected recipients and the [IVM] therefor over the local network and the external network,'" *id.* (citing the IPR Petition (J.A. 225) and Petitioners' expert's testimony (J.A. 1084–85).

Second, Uniloc argues that Malik does not teach transmitting or routing the selected recipients and the instant voice message over the local network "*and*" the external network, as recited by independent claims 14, 28, 51, and 62. Appellant's Br. 5–9 (emphasis added). This argument is unavailing. Figure 2 of Malik depicts a "prior art IM network" using a "Jabber" network architecture, wherein "[e]ach Jabber client . . . is attached to a local Jabber server[.]" J.A. 1173–74. Figure 2 shows "Jabber client 200" connected to "Jabber client 215," which Malik states is a "local IM server." J.A. 1174. Malik states that, in a preferred embodiment, "VIM client 310" of Figure 3

"communicates with a VIM server 330 via the Internet, or some other communication network." J.A. 1174; *see* '890 patent, col. 25 ll. 55–56 (describing "the Internet" as an "external network"); J.A. 1083 (Petitioners' expert testifying that "Malik explicitly teaches using the Internet, which is a type of external network."). Petitioners' expert also testified that a PHOSITA "would have found it obvious to incorporate [Figure] 3's Internet into [Figure] 2, such that a server in [Figure] 2 could connect to its clients via the Internet." J.A. 1084. Accordingly, substantial evidence supports the PTAB's finding that "a [PHOSITA] would have found it obvious to implement, using known methods, the connections of Malik's Figure 2 using a combination of local *and* external networks[.]" *Apple*, 2018 WL 4210334, at *15 (emphasis added).

Third, Uniloc argues that "[t]he [PTAB] erred in not recognizing" that Malik "teaches away" from allowing "the generating/transmitting client to select and transmit one or more recipients for an [IVM]." Appellant's Br. 9; *see Ricoh Co. v. Quanta Computer Inc.*, 550 F.3d 1325, 1332 (Fed. Cir. 2008) ("A reference may be said to teach away when a [PHOSITA], upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant." (internal quotation marks and citation omitted)). Uniloc contends that, because Malik discloses a system "designed to exchange a VIM responsively to a VIM invitation," Appellant's Br. 9–10 (internal quotation marks omitted), "the Malik system, by design, leaves control in the hands of the (receiving) first user" who sends the invitation, and not the transmitting "second user," *id.* at 11. This argument is without merit. Malik discusses "accepting a VIM invitation" when describing Figure 3, "one representative embodiment, among others, of a voice message delivery system[.]" J.A. 1174. "[The] mere disclosure of alternative designs" in the prior art "does not teach away." *In re Fulton*, 391 F.3d 1195,

1201 (Fed. Cir. 2004).  Accordingly, substantial evidence supports the PTAB's finding that Malik and Väänänen rendered obvious the "transmitting the selected recipients" limitation recited in independent claims 1, 14, 28, 40, 51, and 62.[8]

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive.  Accordingly, the Final Written Decision of the U.S. Patent and Trademark Office's Patent Trial and Appeal Board is

## **AFFIRMED**

---

[8]     Uniloc's argument that Malik "does not teach that its sending and receiving clients use different types of networks for its voice messaging," is predicated on us adopting Uniloc's construction of "external network" and "local network."  Appellant's Br. 21 (arguing that, "[i]n applying its erroneous claim construction, the [PTAB] failed to recognize a dispositive distinction between" Malik "and the various claim limitations directed to different types of networks recited as a 'local network' and an 'external network'").  Because we do not adopt Uniloc's construction, we need not address Uniloc's conditional argument.  *See Knowles Elecs. LLC v. Iancu*, 886 F.3d 1369, 1373 n.3 (Fed. Cir. 2018) ("Because we conclude that the PTAB did not err in its construction of the disputed limitation, we need not address the appellant's conditional arguments as to the PTAB's unpatentability determinations." (internal quotation marks, brackets, and citation omitted)).